UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------X
DR. MILTON PRYSTOWSKY, in his own right and as EXECUTOR OR THE ESTATE OF ROSE PRYSTOWSKY,

                    Plaintiff,

   v.

TGC STORES, INC., ADT SECURITY SERVICES, INC., INVACARE CORPORATION, GOLDEN BROTHERS, INC. d/b/a GOLDEN TECHNOLOGIES, PRIDE MOBILITY PRODUCTS CORP. and JOHN DOES 4 – 10

                    Defendants.
---------------------------------------------------------------X
PRIDE MOBILITY PRODUCTS CORP.

                    Third-Party Plaintiff,

   v.

DEWERT MOTORIZED SYSTEMS, PHOENIX MECANO, INC. and KINGSTEC INDUSTRIES, INC., and JOHN DOES 1 – 10

                    Third-Party Defendants.
---------------------------------------------------------------X

Civil Action No.
2:07-cv-00072-SDW-MCA

**PRIDE MOBILITY PRODUCTS CORP.'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant/third-party plaintiff, PRIDE MOBILITY PRODUCTS CORP. ("Pride"), by its attorneys, MIRANDA SAMBURSKY SLONE SKLARIN VERVENIOTIS LLP, as and for its required statement of material facts, pursuant to Rule 56.1 of the Local Rules of this Court, states that there are no material issues of fact with respect to the following:

### BACKGROUND

1.    This action arises out of a January 7, 2004 fire at the residence of Drs. Milton and Rose Prystowsky who lived at 4 Garden Place, Nutley New Jersey (the "Premises"). *See* Exhs.

A and G.[1] Plaintiffs seek damages for the wrongful death of Rose Prystowsky, who died in the fire, compensatory damages for Milton Prystowsky, who was injured in the fire, and for property damage to the Premises.[2] *Id.*

2. Plaintiffs contends that the fire occurred in and/or at a combination lift chair (the "Lift Chair") located on the first floor of the Premises. *See* Exh. A, ¶ 12; Exh. G, ¶ 18.

3. The action was commenced in New Jersey Superior Court, Essex County, on January 5, 2006, two (2) days before the expiration of the two (2) year statute of limitations, which is applicable to the plaintiffs' claims for, *inter alia*, personal injury, wrongful death and products liability (hereafter the "State Court Action"). *See* Exh. A.

4. Named as defendants in the State Court Action were TGC Stores, Inc. ("TGC"), the entity from which the Prystowsky's purchased the Lift Chair and ADT Security Services, Inc. ("ADT"), the home alarm company which installed/maintained the alarm system in the Premises. *See* Exh. A.

5. On or about January 4, 2007, ADT removed the State Court Action to Federal Court. *See* Exh. B.

6. On January 9, 2009, five (5) years after the fire at issue and three (3) years after the expiration of the two (2) year statute of limitations, plaintiffs filed a Second Amended Complaint adding as defendants Pride Mobility and Golden Technologies, as alleged manufacturers of the Lift Chair. *See* Exh. G.

---

[1] Reference are to the exhibits attached to the Declaration of Neil L. Sambursky, dated November 24, 2010

[2] As of September 23, 2010, Stephen D. Prystowsky, Eric N. Prystowsky and Michael Prystowsky, were substituted in as plaintiffs, as the Executors of the Estate of Dr. Milton Prystowsky, and Stephen D. Prystowsky and Eric N. Prystowsky were substituted as plaintiffs, as the Executors of the Estate of Rose Prystowsky. *See* Exh. CC.

7. Significantly, within four (4) days of the fire, the law firm of White and Williams, LLP, was retained by Encompass Insurance, the Prystowsky's homeowner's insurance company, to lead and be "solely responsible" for the cause and origin investigation of the fire for Encompass. *See* Exh. R, p. 38, ln. 1 - p. 39, ln. 12; Exh. N., ¶ 34.

8. Within approximately one (1) month of the fire, White and Williams had obtained from Michael Prystowsky[3], one of the Prystowsky's four (4) sons, a photograph of an August 2002 photograph depicting Rose Prystowsky sitting in the Lift Chair and holding its hand controller. *See* Exh I, pp. 66-68, Exh. J.

9. The emailed copy of the photograph which White and Williams received did not have sufficient clarity to show the name "Pride," or a portion thereof, on the hand controller to the Lift Chair. *See* Exh. J.

10. Michael Prystowsky obtained the photograph of Rose Prystowsky from his brother Richard Prystowsky[4], who had both the negative of the photograph and a photograph reproduced from the negative. *See* Exh. I, p. 33, ln. 17 - p. 34, ln. 2; Exh. K, p. 36, p. 40-41, p. 48, ln. 1-13, p. 45, *et seq.*

11. When reproduced from the negative, the photograph shows the name "Pride," or a portion thereof, on the hand controller to the Lift Chair, which Rose Prystowsky is holding. *See* Exh. M; Exh. S; Exh. W.

12. Therefore, prior to the expiration of the two (2) year statute of limitations, plaintiffs had in their possession evidence that identified Pride Mobility as a potential manufacturer of the Lift Chair. *Id.*

---

[3] Michael Prystowsky is now a named plaintiff in the above matter, and prior thereto was represented by White and Williams. Exh. I at pp. 66-68, 156; Exh. CC.

[4] Richard Prystowsky is represented by White and Williams. *See* Exh. K.

3

13. Prior the expiration of the two (2) year statute of limitations, White and Williams did not request an original copy of the photograph. *See* Exh. K, p. 48 ln. 1-19; Exh. I p. 38, ln. 16-21.

14. It was not until Pride Mobility's counsel, as part of their due diligence after Pride Mobility was sued, requested an original copy of the photograph in 2010, that the White and Williams firm obtained it. *See* Exh. K, p. 48 ln. 1-19; Exh. L; Exh I, p. 40, ln. 6 - p. 41, ln. 3; Exh. S; Exh. W.

15. In addition, on November 7, 2006, over two (2) years after the expiration of the two (2) year statute of limitations and over two (2) years before plaintiffs sued Pride Mobility, the law firm of White and Williams received a letter from the Steven B. Deutsch, the former CFO of TGC Stores, Inc. ("TGC") advising that if the Lift Chair was purchased from TGC in approximately the year 2000, it "would likely have [been] manufactured" by Golden Technologies, Invacare or Pride Mobility. *See* Exh. O.

16. In July 2007, plaintiffs sought leave to file a First Amended Complaint to add Invacare Corporation ("Invacare") as a defendant and as the manufacturer of the Lift Chair. *See* Exhs. C, D and E.

17. In July 2007, when plaintiffs sought leave to sue only Invacare, plaintiffs were aware of Pride's identity and had been informed that Pride was a potential manufacture of the Lift Chair. *See* Exh. N, ¶4, 5, and 6.

18. In July 2007, although aware of Pride's identity, plaintiffs did not seek leave to sue Pride. *See* Exhs. C, D and E.

19. Rather, plaintiffs waited until January 2009, more than twenty-six (26) months after they learned of Pride's identity, to sue both Pride and Golden Technologies, as the manufacturers of the Lift Chair. *See* Exh. G.

**PLAINTIFFS' "DUE DILIGENCE" TO IDENTIFY THE MANUFACTURER OF THE LIFT CHAIR PRIOR TO EXPIRATION OF THE STATUTE OF LIMITATIONS**

20. On January 8, 2004, four (4) days after the fire, Encompass Insurance, the Prystowsky's homeowner's insurance company, retained the law firm of White and Williams, LLP, to lead and be "solely responsible" for the cause and origin investigation for Encompass. *See* Exh. R, p. 38, ln. 1; p. 39, ln. 12.

21. Within one (1) month of the fire, Michael Prystowsky, first met with Attorney Deborah Crinigan, of White and Williams, and counsel immediately began their representation of the Prystowskys. *See* Exh. I at pp. 66-68, 156.

22. Within approximately one (1) month of the fire, Michael Prystowsky made requests to all his brothers and family to send him whatever pictures they had of the Lift Chair. *See* Exh. I, p. 30-31.

23. As it turned out, Richard Prystowsky, Michael Prystowsky's brother, had an original copy and negative of an August 2002 photograph of Rose Prystowsky sitting in the Lift Chair and holding its hand controller. *See* Exh. K, pp. 36; 40-41, 45.

24. When the photograph of the Lift Chair is reproduced from the negative, it shows the name Pride, or a portion thereof, on the hand controller that Rose Prystowsky was holding. *See* Exh. M; Exh. S; Exh. W.

25. Richard Prystowsky had a photograph reproduced from the negative, as well as the negative, in his home and which he located shortly after the fire. *See* Exh. K, pp. 36; 40-41, 45.

26. However, rather than sending his brother an original photograph or its negative, Richard Prystowsky took a photograph of the original picture with a digital camera and then emailed Michael Prystowsky the picture of the picture. *See* Exh. K, p. 47, ln. 6 - p. 48, ln. 3.

27. Within months of the fire, Richard Prystowsky had emailed the photograph of the photograph to Michael Prystowsky, who is represented by White & Williams. *See* Exh. I, p. 33, ln. 34 - p. 35, ln. 19.

28. The emailed photograph of the photograph that was sent to Attorney Crinigan was not of sufficient quality to show the name Pride, or a portion thereof, on the hand controller. *See* Exh. J.

29. Nevertheless, in 2004, Richard Prystowsky was not asked for the original photograph or the negative of the photograph by anyone. *See* Exh. K, pp. 75-76

30. In 2005, Richard Prystowsky was not asked for the original photograph or the negative of the photograph by anyone. *Id*.

31. In 2006, Richard Prystowsky was not asked for the original photograph or the negative of the photograph by anyone. *Id*.

32. In 2007, Richard Prystowsky was not asked for the original photograph or the negative of the photograph by anyone. *Id.*

33. In 2008, Richard Prystowsky was not asked for the original photograph or the negative of the photograph by anyone. *Id.*

34. Pride Mobility was not sued until January 2009, and issue was joined by Pride Mobility on February 3, 2009. *See* Exh. H.

35. In 2009, White and Williams did not ask Richard Prystowsky for the original photograph or the negative of the photograph. *See* Exh. K, pp. 75-76.

36. As part of Pride Mobility's due diligence in investigating the above matter, by email dated April 6, 2010, the undersigned requested that Attorney Crinigan produce for inspection the original photograph depicting Mrs. Rose Prystowsky sitting in the Lift Chair. *See* Exh. L.

37. It was not until Pride Mobility's April 2010 request for the original photograph that Richard Prystowsky was asked for the negative:

> Q. Did anyone ever ask you for the negative?
> A. Yes.
> Q. When were you first asked for the negative?
> A. Somewhere towards the end of April of 2010, this year.
> Q. Were you told why you were being asked for the negative?
>
> MS. CRINIGAN: I'm going to object to the form of the question to the extent that anything responsive to that is protected by attorney/client privilege and attorney work product.
>
> Q. Are the only conversations you had -- Well, withdrawn. Was it Attorney Crinigan who asked you for the negative in April 2010?
> A. Yes.
> Q. Was that the first time that Attorney Crinigan had asked you for the negative of the photograph shown of R. Prystowsky Exhibit 1?
> A. Yes.
>
> *See* Exh. K, p. 48, ln. 7 - p. 49, ln.3.

38. Richard Prystowsky located the original photograph and negative within a few days of receiving the request for same in 2010. *See* Exh. K, p. 76, ln. 19 - p. 77, ln. 4.

39. Richard Prystowsky sent the negative and original photograph to Attorney Crinigan. *Id.* at pp. 74, ln. 16 -24; Exh. S; Exh. W.

40. The undersigned received photographs, made from the negative, on May 19, 2010. *See* Exh. S.

41. From January 1, 2004 through April 2010, Richard Prystowsky and his wife were the only persons in possession of the original photograph and the negative of the photograph. *See* Exh. K, p. 78, ln. 1-6.

42. Richard Prystowsky was never asked for any information by anyone about who was the manufacturer of the Lift Chair. *See* Exh. K, p. 49.

43. Attorney Crinigan also initially requested that Michael Prystowsky find out where the Lift Chair was purchased. *See* Exh. I, pp. 80-82.

44. By June 2004, Michael Prystowsky determined, through Medicare records, that the Lift Chair was purchased from TGC. *Id.* at pp. 80-82.

45. Michael Prystowsky did not know what efforts his attorney had undertaken to identify the manufacturer of the Lift Chair as of June 2004. *Id.* at p. 164.

46. On or about January 5, 2006, two (2) days before the expiration of the two (2) year statute of limitations, the action entitled, <u>Dr. Milton Prystowsky, in his own right and as, Executor of the Estate of Rose Prystowsky v. TGC Stores, Inc., John Does Nos. 1-10 and ADT Security Services, Inc.</u>, was commenced in the Superior Court for the State of New Jersey, Essex County, under Docket No. L-183-06. *See* Exh. A.

**47.** While readily available to plaintiffs was a photograph depicting the name Pride, or a portion thereof, on the hand controller to the Lift Chair, plaintiffs did not name Pride Mobility as a defendant in the State Court Action. *See* Exh. A; Exh. M, Exh. S, Exh. W.

**48.** The complaint in the State Court Action does not identify the manufacturer of the chair, but rather asserts that John Doe defendants 1-10, "whose identities [were] not presently known," were the entities responsible for the "design, assembly, manufacture, inspection and production of the chair." *See* Exh. A.

### PLAINTIFFS' "DUE DILIGENCE" TO IDENTIFY THE MANUFACTURER OF THE LIFT CHAIR AFTER FILING THE STATE COURT COMPLAINT

**49.** Prior to November 3, 2006, Attorney Crinigan provided Steven B. Deutsch, the former CFO of TGC Stores, Inc. with documents and correspondence regarding TGC. *See* Exh. N.

**50.** By letter dated November 3, 2006 letter, Mr. Deutsch advised Attorney Crinigan that either Pride, Golden Technologies or Invacare likely manufactured the Lift Chair. *See* Exh. O.

**51.** The November 3, 2006 letter to Attorney Crinigan states, in relevant part, as follows:

> At no time did TGC Stores, Inc. manufacture the product described in your documents. During the year 2000, TGC may have been a dealer of the product in question from Golden Technologies, Invacare and Pride Mobility Products. **One of these companies would likely have manufactured the chair purchased by your client**….

*Id.* (Emphasis added).

**52.** Attorney Crinigan's law firm received the November 3, 2006 letter on November 7, 2006. *Id.*; Exh. N, ¶3, 4, and 5.

9

53. In 2006, after receipt of Mr. Deutsch's November 3, 2006 letter, White and Williams did not call Pride Mobility regarding the instant action or the Lift Chair. *See* Exh. N, ¶7.

54. In 2006, after receipt of Mr. Deutsch's November 3, 2006 letter, White and Williams did not write to Pride Mobility regarding the instant action or the Lift Chair. *See* Exh. N, ¶8.

55. In 2006, after receipt of Mr. Deutsch's November 3, 2006 letter, White and Williams did not subpoena Pride Mobility for documents regarding the instant action or the Lift Chair. *See* Exh. N, ¶11.

56. In 2006, after receipt of Mr. Deutsch's November 3, 2006 letter, White and Williams did not subpoena Pride Mobility for testimony regarding the instant action or the Lift Chair. *See* Exh. N, ¶10.

57. In 2006, after receipt of Mr. Deutsch's November 3, 2006 letter, White and Williams did not seek leave to add Pride Mobility as a defendant in the instant action. *See* Exh. N, ¶13.

58. On or about January 4, 2007, defendant ADT removed the State Court Action to this Court based on diversity of citizenship. *See* Exh. B

59. On or about February 2, 2007, approximately three (3) months after plaintiffs learned that Pride Mobility was one (1) of only three (3) possible manufacturers of the Lift Chair, plaintiffs served Pride Mobility with a subpoena *duces tecum* (the "Subpoena") for the following:

> Any and all documents, information, or records, including, but not limited to invoices, checks, records of service calls, regarding a prescription for a claim by Dr. Lucien Cote, UPIN#605769, for Rose Prystowsky, and/or regarding 4 Garden Place, Nutley, New Jersey, 07110

*See* Burns Aff., Exh. "A."[5]

---

[5] References are to the Affidavit of Patrick Burns, sworn to November 23, 2010 (hereafter "Burns Aff.")

60. The Subpoena does not reference what the action is about. *Id.*

61. The Subpoena does not reference that the action involves a lift chair. *Id.*

62. The Subpoena does not reference that the action involves a fire. *Id.*

63. The Subpoena did not ask for any documents regarding TGC Stores, Inc. *Id.*

64. Pride Mobility did business with "Take Good Care" (the apparent d/b/a of TGC Stores, Inc.) and not TGC Stores, Inc.; therefore, Pride Mobility had no documents regarding TGC Stores in response to the Subpoena. *See* Burns Aff., ¶8-9.; Exh. DD, p. 30, ln. 25-p. 31, ln.7.

65. On February 2, 2007, Mary McGohon of the White and Williams firm spoke with Patrick Burns of Pride Mobility regarding the Subpoena. *See* Exh. P.; Burns Aff., ¶10-16.

66. Mr. Burns advised Ms. McGohon that Pride Mobility had no relationship with either the Prystowskys or TGC, and no records regarding the same. *Id.* at ¶11.

67. Mr. Burns advised Ms. McGohon that Pride did not know a company by the name of TGC Stores, Inc. *Id.*

68. During their February 2, 2007 conversation, Ms. McGohon did not advise Mr. Burns of the nature of the action, that the action arose out of a fire or that a lift chair was allegedly involved. *Id.* at ¶13-14.

69. During their February 2, 2007 conversation, Mr. Burns advised Ms. McGohon that Pride Mobility would not have any prescription information for Rose Prystowsky, as Pride Mobility is a manufacturer and the products are sold through distributors. *Id.* at ¶12.

70. During their February 2, 2007 conversation, Ms. McGohon did not advise Mr. Burns that plaintiffs had a photograph of the Lift Chair. *Id.* at ¶15.

11

71. Ms. McGohon did not provide Mr. Burns with a copy of the photograph of Rose Prystowsky in the Lift Chair. *Id.*

72. During their February 2, 2007 conversation, Ms. McGohon did not advise Mr. Burns that her law firm was in possession of a November 3, 2006 letter from Steven Deutsch, of TGC, identifying Pride Mobility as one (1) of only three (3) lift chair providers to TGC. *Id.* at ¶16.

73. Ms. McGohon did not provide Mr. Burns with a copy of the November 3, 2006 letter. *Id.*

74. In 2007, the White and Williams law firm did not subpoena Pride Mobility for testimony regarding the instant action or the Lift Chair. *See* Exh. N, ¶17-18.

75. In 2007, the White and Williams law firm did not seek leave to add Pride as a defendant in the instant action. *See* Exh. N, ¶20.

### **PLAINTIFFS' FIRST AMENDED COMPLAINT AGAINST INVACARE, ONLY**

76. On July 24, 2007, plaintiffs moved for leave to file an amended complaint to add counts of statutory and common law consumer fraud against ADT, and to join INVACARE CORPORATION ("Invacare") only as an additional defendant. *See* Exh. C.

77. In July 2007, when plaintiffs sought leave to sue only Invacare, plaintiffs were aware of Pride's identity and had been informed that Pride was a potential manufacture of the Lift Chair. *See* Exh. N, ¶4, 5, and 6.

78. In July 2007, although aware of Pride's identity, plaintiffs did not seek leave to sue Pride. *See* Exhs. C, D and E.

79. Plaintiffs' motion stated, among other things, that "TGC Stores, Inc. sold the chair which caused the fire to the plaintiffs," and plaintiffs represented:

12

> Plaintiffs now have sufficient information to implead Invacare Corporation as the manufacturer of the chair.
>
> *See* Exh. C, ¶ 12 – 14.

80. On or about October 4, 2007, this Court granted plaintiffs' motion for leave to file a first amended complaint, which was done on or about October 12, 2007. *See* Exh. D and E.

81. Pride served plaintiffs with a Second Set of Interrogatories, and Interrogatory No. 2 therein, sought information about how plaintiffs determined that Invacare was the manufacture of the Lift Chair. The interrogatory states:

> Set forth in detail the date and basis for your conclusion, prior to July 24, 2007, that Invacare was the manufacturer of the Product, and identify all documents related to your determination, including but not limited to all reports, correspondence, and documents.
>
> *See* Exh. P., ¶ 2

82. Notwithstanding the representation made to the Court on July 24, 2007, in support of their motion to implead Invacare, plaintiffs' September 9, 2009 answers to the above interrogatory states: "plaintiff did not conclude that Invacare Corp. was the manufacturer of the chair." *Id.*

### PLAINTIFFS' "DUE DILIGENCE" IN ASCERTAINING PRIDE'S MOBILITY'S IDENTITY IN 2008

83. In 2008, the White and Williams law firm did not call, write or subpoena Pride Mobility for documents or a deposition regarding the instant action or the Lift Chair. *See* Burns Aff., ¶18-20; Exh. N, ¶ 25, 29.

84. Although in November 2006, Mr. Deutsch identified Pride Mobility as one (1) of only three (3) potential manufacturers of the Lift Chair, plaintiffs waited nearly two (2) years to depose Mr. Deutsch on December 2, 2008. *See* Exh. Q.

**85.** During his deposition, Mr. Deutsch reiterated the contents of his November 2006 letter, when he testified that TGC only purchased lift chairs from Pride Mobility, Golden Technologies and Invacare:

> Q. What was the purpose in writing this letter to me?
>
> A. I also felt that you didn't- - it was clear to me, in whatever I had previously read from the information you sent to me, that you were not clear on who manufactured the produce that had been involved in this problem, and I wanted to, in some way, assist you. And I knew that- - off the top of my head, that there were- - there were three companies that- - I can only remember only three companies that we ever bought seat lift chairs from, and I put them down in alphabetical order so that were was no bias.
>
> Q. What were those companies?
>
> A. Golden Technologies, Invacare, Pride Mobility.
>
> Q. And to the best of your recollection, TGC Stores never bought any seat lift chairs from any company other than those three?
>
> A. I don't remember. Most likely not.
>
> *See* Exh. Q, p. 31-33.

**86.** Mr. Deutsch explained that TGC had a preference for Pride Mobility's chairs because they had fewer problems than the other companies, and they dominated the market. *Id* at pp. 34-35.

**87.** While plaintiffs had moved for leave to sue Invacare on July 24, 2007, they waited until December 16, 2008, approximately seventeen (17) months later, to depose an Invacare witness. *See* Exh. T.

### THE "CONSENT ORDER" TO AMEND THE COMPLAINT TO ADD PRIDE AS A DEFENDANT IN 2009

**88.** While in July 2007 plaintiffs' counsel represented to the Court that they had "sufficient information to implead Invacare Corporation as the manufacturer of the chair," on

14

January 7, 2009, twenty-two (22) days after the Invacare witness was deposed, plaintiffs filed a "consent order" to amend the complaint to add Pride Mobility and Golden Technologies as defendants. *See* Exh. F.

89. As Pride was unaware of the instant action until it was served with the Second Amended Complaint, it did not consent to be named in the case. *See* Exh. F; Burns Aff., ¶19-20.

90. Plaintiffs did not file a motion seeking to amend their complaint to name Pride as a defendant. *See* Exh. F.

91. Plaintiffs' counsel did not submit an affidavit to the Court setting forth the manner in which they identified Pride Mobility and Golden Technologies as the true identity(ies) of the "John Doe" manufacturers fictitiously identified in the state court complaint. *See* Exh. N, ¶31.

92. Plaintiffs did not file a proposed pleading as against Pride. *See* Exh. F.

93. On October 3, 2008, approximately three (3) months before plaintiffs filed their "Consent Order" to add Pride Mobility as a defendant, a scheduling conference was held with the Court. *See* Exh. Z.

94. On October 10, 2008, a Revised Pretrial Scheduling Order was entered, based upon the October 3, 2008 conference, and the Order does not provide for or even mention, plaintiffs' filing of a Second Amended Complaint. *Id.*

**THE SECOND AMENDED COMPLAINT NAMING PRIDE AS A DEFENDANT IN 2009**

95. On or about January 9, 2009, over three (3) years after the expiration of the applicable two (2) year statute of limitations, and five (5) years after the fire, plaintiffs filed a Second Amended Complaint naming Pride Mobility and Golden Technologies as defendants, without filing the required motion or affidavit. *See* Exh. G.

15

96. The Second Amended Complaint alleges that Pride Mobility designed, assembled, manufactured, inspected, produced, marketed, sold, and repaired the chair, and asserts causes of action for negligence, strict liability, wrongful death, and survivorship as against Pride Mobility. *See* Exh. G.

97. The Second Amended Complaint also alleges that Golden Technologies designed, assembled, manufactured, inspected, produced, marketed, sold, and repaired the chair, and asserts causes of action for negligence, strict liability, wrongful death, and survivorship as against Golden Technologies. *See* Exh. G.[6]

98. Pride filed its Answer with Cross-Claims against all defendants to the Second Amended Complaint on or about February 3, 2009. *See* Exh. H

99. In its Answer, Pride asserts that the action against it is barred by the applicable statute of limitation, statute of frauds, waiver, laches and estoppel. *Id.*

100. In its Answer, Pride asserts that the court lacks personal jurisdiction over Pride. *Id.*

101. Plaintiffs served Pride Mobility with interrogatories and document requests seeking, among other things, information regarding sales of lift chairs, and information regarding the design, testing and manufacturing of lift chairs, as well as identification of the Lift Chair. *See* Exh. U.

102. On April 13, 2009, Pride responded that it did not have any information to answer the requests. *Id.*

103. On April 17, 2009, plaintiffs served Pride with a Request For Admissions regarding whether it was the manufacturer of the Lift Chair. *See* Exh. V.

---

[6] Plaintiffs subsequently dismissed their claims against Invacare and Golden Technologies. *See* Exhs. GG, HH.

104. On May 9, 2009, based upon information available to it, Pride denied the allegations. *Id.*

105. On or about May 29, 2009, plaintiffs obtained an order requiring that Pride, Invacare and Golden produce their design specifications for lift chairs manufactured from 1999 – 2000, and any other design specifications utilized after that time period which may been applicable to the Lift Chair. *See* Exh. Y.

106. On August 5, 2009 and March 10, 2010, plaintiffs conducted the deposition of Michael Zablocky of Pride Mobility. *See* Exh. AA ; Exh. BB.

107. During his deposition, Mr. Zablocky was extensively questioned on product identification, design, testing issues, etc. *See* Exh. AA, pp. 61-65, *et seq.*; Exh. BB, pp. 147-154, 162-164, 192-217.

108. Plaintiffs did not produce a legible copy of the photograph of Rose Prystowsky, until requested by Pride Mobility in 2010, after plaintiffs served their Requests for Admissions and completed the deposition of Michael Zablocky. *See* Exhs. S and W.

109. After conducting Mr. Zablocky's deposition, and then producing a legible copy of the photograph of Rose Prystowsky, plaintiffs' counsel tried to impugn Mr. Zablocky's credibility in a June 1, 2010 letter to the Court. *See* Exh. W.

110. Moreover, after producing a legible copy of the photograph, after Mr. Zablocky's deposition, plaintiffs' counsel then used the photograph to interrogate three (3) other Pride witnesses. *See* Exh. DD, pp. 58-67; Exh. EE, pp. 118-121, 133-142; Exh. FF, pp. 157-160.

111. The Lift Chair was allegedly purchased by the Prystowsky's in November, 2000. *See* Exh. G, ¶ 14.

112. Pride has a seven (7) year document retention policy which applies to, among other things, records regarding the design, manufacture, testing, sales and warranty information regarding Pride's lift chairs.. *See* Burns Aff., ¶24.

113. Because Pride was not brought into this case until 2009, Pride's efforts to retrieve documents were hampered. *See* Burns Aff., ¶26.

114. Through Pride's internal investigation of this matter after being sued, including its determining whether the documents requested by plaintiffs existed, Pride determined that more than seven (7) years had elapsed from the time the Lift Chair was allegedly purchased and Pride being brought into the case. This is significant because Pride document retention policy only requires that documents be maintained for a maximum of seven (7) years. *Id.*

115. Thus, during Pride's due diligence in searching its records in order to respond to discovery, Pride and its staff found itself unable to secure many documents that would have existed prior to 2002 (which was seven (7) years before Pride was sued). For example, plaintiffs had requested documents regarding Pride's testing of lift chairs from 2000 and earlier. Those records no longer existed when Pride was sued in 2009. *See* Burns Aff., ¶27.

116. Patrick Burns, the Litigation Services Manager for Pride, was personally involved in searching for and coordinating with others at Pride the search for documents responsive to plaintiffs' discovery demands, as ordered by the Court. Burns Aff., ¶28.

117. While Pride was able to locate some information on the design, testing, manufacture and sales of its lift chairs, based upon Mr. Burns' knowledge of Pride's documents, he knew

that more information existed at one time on the topics for which discovery was sought, than Pride was able to locate in response to plaintiffs' discovery demands. *Id.*

118. Based upon Mr. Burns' conversations with Pride personnel and his personal knowledge of Pride's business practices, he came to learn that documents were discarded as part of Pride's ordinary course of business. Burns Aff., ¶29.

119. If plaintiffs had sued Pride in January 2006, when the action was first commenced, or in November 2006, when they first learned that Pride was one (1) of only three (3) possible manufacturers of the Lift Chair, Pride would have had additional records and documents in its possession regarding the design, testing, manufacture and sales of its lift chairs, which would support its defenses in this case. Burns Aff., ¶30.

DATED:    November 24, 2010

                                               **s/ Neil L. Sambursky**

                                               **NEIL L. SAMBURSKY (NLS-8520)**