## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------X

DR. MILTON PRYSTOWSKY, in his own right and as EXECUTOR OR THE ESTATE OF ROSE PRYSTOWSKY,

                           Plaintiff,

     v.

TGC STORES, INC., ADT SECURITY SERVICES, INC., INVACARE CORPORATION, GOLDEN BROTHERS, INC. d/b/a GOLDEN TECHNOLOGIES, PRIDE MOBILITY PRODUCTS CORP. and JOHN DOES 4 – 10

                           Defendants.

**Civil Action No.
2:07-cv-00072-SDW-MCA**

**Oral Argument Requested**

-------------------------------------------------------------X

PRIDE MOBILITY PRODUCTS CORP.

                           Third-Party Plaintiff,

     v.

DEWERT MOTORIZED SYSTEMS, PHOENIX MECANO, INC. and KINGSTEC INDUSTRIES, INC., and JOHN DOES 1 – 10

                           Third-Party Defendants.

-------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## PRIDE MOBILITY PRODUCTS CORP.'S MOTION FOR SUMMARY JUDGMENT

Neil L. Sambursky, Esq.
**MIRANDA SAMBURSKY
SLONE SKLARIN VERVENIOTIS LLP**
240 Mineola Blvd.
Mineola, New York 11501
(516) 741-7676
Attorneys For Pride Mobility
Products Corp.

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................1

1.   THE PERSONAL INJURY AND WRONGFUL DEATH CLAIMS ARE TIME BARRED 1

A.   PLAINTIFF DID NOT EXERCISE "DUE DILIGENCE" TO ASCERTAIN PRIDE'S
     IDENTITY .........................................................................................1

B.   PLAINTIFF'S OVER SIX (6) YEARS DELAY IN OBTAINING THE ORIGINAL
     PHOTOGRAPH OF THE LIFT CHAIR SHOWS LACK OF DUE DILIGENCE .............6

C.   PRIDE HAS BEEN PREJUDICED BY PLAINTIFF'S DELAY ..................................10

2.   PRIDE WAS NOT PROPERLY JOINED UNDER NEW JERSEY COURT
     RULE 4:26-4 .....................................................................................14

CONCLUSION .............................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Cardona v. Data Systems Computer Centre, 261 N.J.Super. 232 (1992) ....................................... 9

Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949) ............................................... 15

Cruz v. City of Camden, 898 F.Supp. 1100, 1107 (D.N.J.1995)................................................... 14

Derienzo v. Harvard Industries, 357 F.3d 348 (2004) ............................................................. 9, 10

Elballat v. Parc Harrison Condo Assoc., 2008 WL 4648270
    (October 20, 2008, N.J.Super. A.D.) ........................................................................... 2, 6

Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938)........................................................ 14

Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 299 A.2d 394 (1973)........................ 11

Gilleski v. Community Medical Center, 336 N.J.Super. 646, 765 A.2d
    1103 (2001) ................................................................................................................... 14

Johnston v. Muhlenberg Reg'l Med. Ctr., 326 N.J. Super. 203, 208,
    740 A.2d 1122, 125 (App. Div. 1999) ...................................................................... 3, 11

Matynska v. Fried, 175 N.J. 51, 53 (2002) .................................................................................. 9

Mears v. Sandoz Pharmaceuticals, Inc., 300 N.J.Super. 622 (1997)...................................... 9, 11

Monaco v. City of Camden, 2008 WL 408423 (D.N.J., 2008)..................................................... 14

Padilla v. Township of Cherry Hill, 110 Fed.Appx. 272 (3d Cir. 2004) ................................. 3, 14

Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81 (2008)............................................................ 13

Yarchak v. Trek Bicycle Corp., 208 F.Supp.2d 470 (D.N.J. 2004)............................................. 14

Younger v. Kracke, 236 N.J.Super. 595 (1989)............................................................................ 9

**Statutes/Rules/Regulations**

21 C.F.R. §7.59 ................................................................................................................ 13

21 C.F.R. §7.59(c) ........................................................................................................... 13

21 C.F.R. §820.180 .......................................................................................................... 13

21 C.F.R. §820.180(b) ..................................................................................................... 13

21 C.F.R. § 820.181 ......................................................................................................... 13

21 C.F.R. §890.3110 ........................................................................................................ 13

FRCP 7 (b) (1) ................................................................................................................ 15

FRCP 15 (a) (2) ............................................................................................................... 15

FRCP 15 (c) (1)(A) .......................................................................................................... 15

FRCP 15(c)(1) .................................................................................................................. 14

FRCP 21 ........................................................................................................................... 15

New Jersey R. 4:26-4 ........................................................................................... 8, 14, 15

Rule 15(c) ......................................................................................................................... 14

Rule 26 ............................................................................................................................... 8

# ARGUMENT

## 1.   THE PERSONAL INJURY AND WRONGFUL DEATH CLAIMS ARE TIME BARRED

### A.   PLAINTIFF DID NOT EXERCISE "DUE DILIGENCE" TO ASCERTAIN PRIDE'S IDENTITY

By February 2, 2004, less than one month after the fire, Plaintiff was aware of TGC Store, Inc.'s identity as the alleged seller of the Lift Chair.  Opp. at 3-4; Opp. Exh. C, ¶10.[1]  Plaintiff claims their attempt to then identify the manufacturer of the Lift Chair prior to filing suit, was "stymied by . . . the lack of cooperation by Steven Deutsch, TGC's principal."  Opp. at 13.  Although Plaintiff does not allege a single act by Mr. Deutsch that purportedly frustrated their efforts, their critical admission means that Plaintiff had identified Steven Deutsch shortly after the fire, but did nothing with this information for years.

Plaintiff also claims their efforts to serve TGC were "frustrated and prolonged" by Mr. Deutsch efforts "to evade service."  Id.  This claim is, however, belied by the fact that Plaintiff was admittedly trying to serve Mr. Deutsch at the wrong address until August 28, 2006.  Opp. Exh. I.  Once Plaintiff realized their error, service was effectuated on September 29, 2006 and by November 3, 2006, Mr. Deutsch sent counsel an "unsolicited" letter listing the three (3) likely manufacturers of the Lift Chair (Opp. at 14, 38); hardly the act of a person trying

---

[1] References are to Plaintiff's Opposition Brief, dated January 19, 2011 (Document 163) ("Opp.") and to the Exhibits attached to the brief ("Opp. Exh.")

to "stymie" counsel's efforts.  Nevertheless, Plaintiff claims that in December 2006 Mr. Deutsch "in essence told counsel to leave him alone."  Opp. at 37.  That advice was heeded; counsel left Mr. Deutsch alone and chose not to depose him for an additional two (2) years.

Counsel then blames the delay in deposing Mr. Deutsch on the 2008 scheduling conflicts of the other lawyers in the case at the time.  Opp. at 37; Opp. Exh. C, ¶ 62-70.  This excuse begs the question of why counsel waited until 2008 to depose Mr. Deutsch, and ignores the fact that the first writing evidencing Plaintiff's desire to depose Mr. Deutsch was not until September 30, 2008.  Opp. Exh. P.  If the other lawyers in the case were truly hampering Plaintiff's counsel's discovery efforts, counsel was obliged to compel the discovery and their failure to do so is just another example of the lack of due diligence.  See Elballat v. Parc Harrison Condo Assoc., 2008 WL 4648270 (October 20, 2008, N.J.Super. A.D.) (Plaintiff's waiting forty (40) months to file a motion to compel building owner to name the fictitious party elevator repair company was unjustifiable.)

Further, if Mr. Deutsch was truly "stymieing" Plaintiffs' efforts all of 2004 and 2005, why wait until 2008 to subpoena his testimony?  Plaintiff could have filed suit immediately after the fire as they were aware of ADT's identity, as well as TGC's, and filing suit would have given Plaintiff subpoena power to obtain information from TGC, Steven Deutsch and anyone else.  See Johnston v.

Muhlenberg Regional Medical Center, 326 N.J.Super. 203, 206 (1999) (Plaintiff's efforts prior to expiration of the limitations period lacked due diligence because "ordinary routine discovery" would have identified alleged tortfeasor); See also Padilla v. Township of Cherry Hill, 110 Fed.Appx. 272, 277 (3d Cir. 2004) (Denying joinder because even if defendants were "stonewalling," plaintiff never requested the court's permission to take pre-filing depositions.)

Plaintiff even blames Pride for not pursuing Mr. Deutsch by making unsubstantiated claims, including that Pride supposedly misled Plaintiff into believing it had had no prior relationship with TGC Stores, Inc. and that Pride produced records of a relationship with TGC Stores, Inc.  Opp. at 20, 27.

If, as claimed by Plaintiff, Pride produced records of products sold to TGC Stores, Inc., why is Plaintiff's brief devoid of reference to even one (1) document produced by Pride with the name TGC Stores, Inc. on it?  The fact is that no such documents exist.   Sambursky Aff., ¶ 2-3.[2] The reason being, Pride only did business with Take Good Care, and this was confirmed by Sandra Jonelunas, Pride's Field Service Representative, who testified she never even heard of TGC Stores, Inc., and she had no idea that Take Good Care may have been a d/b/a for

---

[2] References are to the Affidavit of Neil L. Sambursky, dated February 8, 2011, and attached hereto as Exhibit A ("Sambursky Aff.").

TGC Stores, Inc.  Exh. DD[3], p. 30-31; see also Exh. BB, p. 198-199.  Incredibly, Attorney Crinigan testifies that "Pride…produced the sales records to defendant, TGC Stores, Inc."  Opp. Exh. C ¶88.  Counsel does not attach or reference a single piece of paper to support her accusation.  The reason being, the sales records produced by Pride reference only Take Good Care.  Sambursky Aff. ¶ 3.

That Pride only dealt with Take Good Care is also confirmed by the Medicare "Certificate of Medical Necessity" which identified the "Supplier" of the chair as "Take Good Care." Opp. Exh. BB.  In fact, while Exhibit "BB" to Plaintiff's opposition papers is the Medicare "Certificate of Medical Necessity," Plaintiff never advises the Court that the Medicare form identified the "SUPPLIER" of the Lift Chair as "Take Good Care."  Plaintiff's hiding this fact further underscores their lack of due diligence and unsupported claim that Pride did business with TGC Stores, Inc. and "misled" Plaintiff in this regard.[4]

The Affidavit of former White & Williams associate Mary McGohon claims that she advised Patrick Burns of Pride that the subpoena served on Pride, which asked only for prescription information and made no reference to any Pride

---

[3] References to "Exh." are exhibits to the Declaration of Neil L. Sambursky, dated November 24, 2010 (Document 145)

[4] The Medicare document's identification of both TGC Stores, Inc. and Take Good Care, at different addresses, lays to rest Plaintiff's unsupported accusation that if Pride "did business with Take Good Care, it did business with TGC Stores, Inc.  R. 56 Rsp.¶64; Opp. Exh. BB.  This assertion seems to be the root of counsel's loose use of TGC Stores, Inc., as meaning Take Good Care.

4

product, involved a fire at the Prystowsky home caused by a seat lift chair possibly made by Pride and sold to TGC Stores, Inc.  Opp. Exh. K.  This is an area of dispute between the two (2) individuals, the resolution of which has no bearing on disposition of the instant motion.

What is beyond dispute is that Ms. McGohon did not tell Mr. Burns about the November 3, 2006 letter from Mr. Deutsch, that she had a photograph of the Lift Chair which bore the initials "RIDE" on the hand controller or that the Medicare "Certificate of Medical Necessity" identified the "SUPPLIER" of the chair as "Take Good Care."  R. 56 Rsp., 70, 71, 73; Opp. Exh. K, BB; Exh. W.  Thus, giving Ms. McGohon every benefit of the doubt for purposes of this motion only, the fact remains, Plaintiff knew that "Take Good Care" was the "SUPPLIER" of the Lift Chair and did not share this information with Mr. Burns.  Rather, Ms. McGohon referenced only TGC Stores, Inc. as the seller of the Lift Chair, a company with which Pride did not do business.  Thus, Mr. Burns advising Ms. McGohon that Pride did not do business with TGC Stores, Inc. was not designed to "mislead" Plaintiff, but was a correct statement of fact and Plaintiff's claim for not acting with due diligence based upon what Mr. Burns advised is without any merit.

Counsel also claims that they could not rely on Mr. Deutsch's November 3, 2006 letter to sue Pride because "[a]n attorney who relies solely on the uncorroborated representations of a single individual without independently

investigating the information could be held liable for Rule 11 sanctions."  Opp. at 33, *et seq.*  However, when counsel deposed Mr. Deutsch, more twenty-four (24) months after they received his November 2006 letter, and he identified Pride a second time during his deposition, Plaintiff felt just fine relying "solely on the uncorroborated representations" of Mr. Deutsch to sue both Pride and Golden Technologies.

In <u>Elballat</u>, <u>supra</u>, just as in our case, the plaintiff argued that they did not want to sue a non-party repair company, even though they knew its name, until counsel first obtained the company's records, because to do otherwise would constitute the filing of a frivolous complaint.  2008 WL 4648270, *3.  The court, however, held that it did not even need to address counsel's argument because even if it were to agree with plaintiff, the ten (10) month delay in suing the company, after discovering its name, was "simply too long."  <u>Id</u>.  Here, Plaintiffs waited twenty-six (26) months after learning Pride's identity before filing an amended complaint.  There is no valid excuse for this conduct.

### B.   PLAINTIFF'S OVER SIX (6) YEARS DELAY IN OBTAINING THE ORIGINAL PHOTOGRAPH OF THE LIFT CHAIR SHOWS LACK OF DUE DILIGENCE

On January 22, 2004, just days after the fire, White & Williams received the only photograph of the Lift Chair and no one else in the entire Prystowsky family "had located anything [else] that would assist in the investigation." Opp. at 3; R.56

Rsp., ¶8; Opp. Exh. C, ¶8-9.  What did Plaintiff do with the only pre-fire evidence of the Lift Chair? Absolutely nothing until it was requested by Pride on April 6, 2010.  R56 Stmt., ¶29-41.  By May 19, 2010, Plaintiff's counsel obtained the original photograph and its negative and, as previously requested by Pride, counsel had made and produced enlargements of the photograph made from the original negative.  Sambursky Aff., ¶ 4-6.

By letter dated June 1, 2010, Attorney Crinigan represented to the Court that "[w]hen the photograph is enlarged from the negative, one can see the letters "RIDE" below Mrs. Prystowsky's fingers on the hand-control.  It is clear now that this is a Pride chair albeit the defendant has not conceded that fact."  Exh. W.  Now, however, counsel argues that only the letters "ide" are visible in the photograph because of a "manipulation of an enlargement from a negative…."  Opp. at 21; see also  R.56 Rsp., ¶24; 108, 109.  This position is inconsistent with counsel's prior representation to the Court and their expert report (Sambursky Aff., Exh. D, p. 26 par. G) and further underscores Plaintiff's lack of due diligence prior to and after the expiration of the statute of limitations.

If counsel had simply requested the original photograph and/or negative in 2004, 2005, or 2006, they would have had more than just Mr. Deutsch's "uncorroborated statement" that Pride was a "likely" manufacturer, they would have had photographic evidence to support the assertion.  Moreover, if counsel had

7

obtained the photograph in 2004, 2005, 2006, etc. it could have assisted Plaintiff's fire investigator, Joseph Caggiano, who was hired in January 2004, to locate an exemplar.

While Mr. Caggiano supposedly determined there were more than thirty-five (35) manufacturers of lift chairs, he delayed his search for exemplars until at least January 22, 2007, over three (3) years after he was hired, and his search was unsuccessful through September 2008.  Opp., Exh. E, ¶13, 30.  Plaintiff does not state when they found a Pride exemplar.  Nevertheless, Pride has maintained a website for over ten (10) years with tools allowing website visitors to obtain dealer information, based on location.  Mr. Caggiano could also have called Pride's "800" number to obtain dealer information, from which he could have tried to track down an exemplar.  See Affidavit of Patrick Burns, attached as Exhibit B hereto.  Thus, any claim that it took years to locate a Pride exemplar is suspect given the tools that were readily available to Plaintiff, but apparently not utilized.

Trying to defend their lack of due diligence, Plaintiff muddles the due diligence standard under R. 4:26-4 with a party's discovery obligations under Rule 26.  Opp. at 21.  R. 4:26-4 does not require that Plaintiff produce documents in the possession of a non-party; it does, however, contrary to plaintiff's claim, require that Plaintiff exercise due diligence to identify the name of the fictitious party before and after filing suit, which includes making inquiries of non-parties.  See

Matynska v. Fried, 175 N.J. 51, 53 (2002) (Motion to join defendant denied because plaintiff violated her obligation to investigate, including not looking in a telephone book or calling the hospital where the doctor worked who was sought to be joined.); Mears v. Sandoz Pharmaceuticals, Inc., 300 N.J.Super. 622 (1997) (Lawsuit dismissed, in part, because simple inquiry or obtaining contract meeting minutes or daily force report would have provided the name of the general contractor.); Younger v. Kracke, 236 N.J.Super. 595 (1989) (The failure to request a police report showed lack of diligence.); Cardona v. Data Systems Computer Centre, 261 N.J.Super. 232 (1992)

Moreover, counsel's non-party discovery argument rings hollow, because when Pride requested the original photograph of the Lift Chair, Plaintiff's counsel quickly obtained it from Richard Prystowsky's wife, a non-party, and produced it to all counsel. That "non-party" photograph now forms the basis for Plaintiff's identification of the Lift Chair as a Pride product. Opp. at 2; Exh. K, W; Sambursky Aff. Exh. D.

Notwithstanding their lack of due diligence in the prosecution of this matter, Plaintiff attempts to equate their "efforts" to identify Pride, with the efforts of plaintiff to identify the manufacturer of a rocket launcher in Derienzo v. Harvard Industries, 357 F.3d 348 (2004) Opp. at 18-20. In Derienzo, plaintiff took two (2) depositions six (6) months after filing suit, two (2) more depositions fifteen (15)

months after filing suit, and a final deposition sixteen (16) months after filing suit during which Plaintiff first learned of defendant's name.

Here, Steven Deutsch was the first witness deposed and that did not occur until thirty-five (35) months after suit was filed, over twenty-four (24) months after Plaintiff knew that Pride was one (1) of three (3) likely manufacturers, and at all times Plaintiff had a photograph identifying Pride and did nothing with it.  While Plaintiff asserts evidence of their due diligence consists of inspections of remains, market research, the purchase of second-hand exemplars, subpoenas <u>duces</u> <u>tecum</u> and the taking of depositions, with the exception of inspection of the physical remains, all of these things were done after the expiration of the two (2) year statute of limitations.  Opp. at 19-20.  Plaintiff's "actions" herein are no way analogous to the true efforts exercised by the plaintiff in <u>Derienzo.</u>

**C.   <u>PRIDE HAS BEEN PREJUDICED BY PLAINTIFF'S DELAY</u>**

Trying to divert attention from itself, Plaintiff has the temerity to claim that any prejudice suffered by Pride was "self-inflicted" because Pride had "destroyed all relevant records under its seven-year document destruction policy…"  Opp. at 23-24.  To be accurate, Pride never claimed that it destroyed all relevant records; rather, Pride argued that while it "has been able to produce some historical sales, testing, design and manufacturing documents/information, information has also been destroyed." Pride Brf., p. 14 (Document 148).

10

Nevertheless, asking Pride to prove how it was prejudiced is really asking it to prove a negative.  That is why New Jersey courts have held that a party can be prejudiced just by the mere passage of time or memory lapse due to delay.  <u>See Johnston v. Muhlenberg Reg'l Med. Ctr.</u>, <u>supra.</u>,326 N.J. Super. at 2089); <u>Farrell v. Votator Div. of Chemetron Corp.</u>, 62 N.J. 111, 299 A.2d 394 (1973); <u>Mears</u>, <u>supra</u>. 300 N.J. Super. at 631.

While it is impossible to say what would have existed if Pride was served years ago, the evidence which exists in the record shows the prejudice to Pride. For instance, Sandra Jonelunas, Pride's Field Service Supervisor, retained what she believed to every fabric swatch for Pride's lift chairs from 1998 to 2002, and based upon what she retained, the chair at issue could not be a Pride chair.  Opp. at 28. Plaintiff claims Pride could not be prejudiced because of what Ms. Jonelunas retained; however, Plaintiff omits that one of their experts contends that "Ms. Jonelunas' assertion regarding the fabric is incorrect."  Sambursky Aff., Exh. D, p. 26.  Plaintiff cannot have it both ways: either Ms. Jonelunas is correct on her assertion based upon what she retained, or she is not and what she has retained is not everything.  Thus, if Pride had been sued earlier they would have more fabric swatches, which is critical evidence on the product identification issue.

Plaintiff does not dispute that the memories of Pride's witnesses would have been better had they been deposed years ago and that Pride no longer has

information it would have otherwise had.  For instance, Mike Zablocky of Pride, could not recall the answers to important questions about such things as design improvements from based on product trends and that Pride does not have any exemplar chairs from the relevant time period.  Exh. AA, p. 34; Exh. BB, p. 169-172, 213-214. James Mulhern, Pride's Vice-president, Research and Development, could not recall important information about Pride's lift chairs including motor mount issues, hand controller assembly and testing issues, details regarding life cycle and load testing, and even his input into drafting the owner's manual.  Exh. FF, p.46-47, 52, 60-61, 71-74, 78, 143.  To be sure, if there is a trial in this case, Pride's witnesses will undoubtedly be cross-examined at trial about what they no longer remember, and the documents Pride no longer possesses – that is prejudice.

Moreover, the memory of Essex County Fire Investigator, Jeffrey Cartwright, who Plaintiff waited until December, 2008 to depose, has also been compromised by time.  Mr. Cartwright had specific discussions with Dr. Prystowsky, about electrical appliances in the area of origin, which Mr. Cartwright could not remember, and for which records no longer exist.  Cartwright, Dep. p. 15.[5]  This is an issue that goes to the heart of this alleged electrical fire case and establishes further prejudice to Pride, as Pride is seeking to establish the true cause of the fire.  While we could go on with other witnesses and issues, the point is

---

[5] References are to the deposition transcript of Jeffrey Cartwright, attached hereto as Exhibit C.

undeniable, due to the delay in both suing Pride, Pride has been prejudiced.

Plaintiff claims, however, that Pride prejudiced itself, because it supposedly did not maintain the requisites documents under 21 <u>C.F.R.</u> §890.3110, 21 <u>C.F.R.</u> §7.59(c), and 21 <u>C.F.R.</u> §820.180. Electronic positioning chairs are considered medical devices under 21 <u>C.F.R.</u> §890.3110; however, this regulation does not impose any duty to retain any documents at all. While 21 <u>C.F.R.</u> §820.180(b) references the retention of records, Plaintiff makes no mention of what records are required to be maintained, or that subsection (c) exempt numerous records from the requirements of the statute. Plaintiff also fails to mention that 21 <u>C.F.R.</u> § 820.181, requires that Pride maintain a "Device Master Record" ("DMR") for its lift chairs. Perhaps Plaintiff omits this fact because Pride produced the complete DMR for the Lift Chair in this case. Sambursky Aff. ¶ 8. Pride maintains all documents required by the FDA. Livingston Aff.[6] Moreover, 21 <u>C.F.R.</u> §7.59 is a "General industry guidance" regarding distribution records in the event of a product recall and also has no bearing on this case.

Finally, Pride's proper destruction of records under its document retention policy, before it was ever a party in this case, or aware of the nature of the suit, cannot "conceivably" make Pride liable for fraudulent concealment as claimed by plaintiff. Opp. At 25, fn.7. <u>Tartaglia v. UBS PaineWebber, Inc.</u>, 197 N.J. 81

---

[6] References are to the Affidavit of Kelly Livingston, attached hereto as Exhibit D.

(2008) ("An act of spoliation by a third party, including a reckless one will not often give rise to an evidentiary sanction in the trial of the case in chief…"); <u>see also</u> <u>Gilleski v. Community Medical Center,</u> 336 N.J.Super. 646, 765 A.2d 1103 (2001).

**2.    PRIDE WAS NOT PROPERLY JOINED UNDER NEW JERSEY COURT RULE 4:26-4**

New Jersey <u>R.</u> 4:26-4 is a substantive law, which plaintiff cannot bifurcate nor opportuney pick and choose which parts to apply.  While Plaintiff does not dispute that <u>R.</u> 4:26-4 determines whether its amendment naming Pride will be permitted to relate back under FRCP 15(c)(1), they claim the motion requirement within the statute is a procedural rule not applicable in Federal Court.

However, as New Jersey law would prohibit plaintiff's Second Amended Complaint against Pride to relate back, because plaintiff failed to submit a written motion and affidavit to amend the complaint, the amendment is impermissible under Rule 15(c).   <u>See</u> <u>Cruz v. City of Camden,</u> 898 F.Supp. 1100, 1107 (D.N.J.1995); <u>Padilla v. Township of Cherry Hill,</u> 110 Fed.Appx. 272 (3d Cir. 2004); <u>Monaco v. City of Camden</u>, 2008 WL 408423 (D.N.J., 2008); <u>Yarchak v. Trek Bicycle Corp.,</u> 208 F.Supp.2d 470 (D.N.J. 2004).

Further, Plaintiff's procedural argument under <u>Erie R. Co. v. Tompkins,</u> 304 U.S. 64, 58 S.Ct. 817 (1938) is wrong because <u>R.</u> 4:26-4 is a substantive law, and although it prescribes the procedure needed to comply with it, that does not render

the statute as a "mere procedural device."  Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949).

Moreover, Plaintiff's claim that FRCP 7 (b) (1), FRCP 15 (a) (2) , and FRCP 21 permitted Plaintiff to add Pride, without regard to the expired statute of limitations, and without regard to FRCP 15 (c) (1)(A), is made without any legal support.  This is so because all of the cases cited above, which Plaintiff does not address, provide that the only way Pride could have been properly brought into this matter was if Plaintiff was permitted to do so under New Jersey substantive law R. 4:26-4, with which Plaintiff did not comply.  Based on plaintiff's non-compliance with R. 4:26-4, the entire Second Amended Complaint must be dismissed.

## CONCLUSION

For all of the reasons set forth above, and in Pride's moving papers, Pride's motion for summary judgment should be granted in all respects.

Dated:        February 8, 2011

**MIRANDA SAMBURSKY SLONE SKLARIN VERVENIOTIS LLP**

**s/ Neil L. Sambursky**
_____
Neil L. Sambursky
240 Mineola Boulevard
Mineola, New York 11501
(516) 741-7676
Attorneys for Defendant
PRIDE MOBILITY PRODUCTS CORP.

15