IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

_____

Civil Action No. 2:07-cv-00072-SDW-MCA

STEPHEN D. PRYSTOWSKY, ERIC N. PRYSTOWSKY AND MICHAEL
PRYSTOWSKY, the Executors of the Estate of Dr. Milton
Prystowsky, and STEPHEN D. PRYSTOWSKY AND ERIC N. PRYSTOWSKY,
the Executors of the Estate of Dr. Rose Prystowsky,

v.

TGC STORES, INC., ADT SECURITY SERVICES, INC., PRIDE MOBILITY
PRODUCTS CORP. and JOHN DOES 4 – 10,

_____

PRIDE MOBILITY PRODUCTS CORP.,

v.

DEWERT MOTORIZED SYSTEMS, PHOENIX MECANO, INC. and JOHN DOES 1 –
10,

_____

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO
FILE THIRD AMENDED COMPLAINT

_____

ORAL ARGUMENT REQUESTED
_____

MOTION DAY MARCH 5, 2012

Deborah A. Crinigan, Esq.
Alan J. Charkey, Esq.
**WHITE AND WILLIAMS LLP**
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395

(215) 864-7194

Attorneys for Plaintiffs,
Stephen D. Prystowsky, Eric
N. Prystowsky and Michael
Prystowsky, the Executors of
the Estate of Dr. Milton
Prystowsky, and Stephen D.
Prystowsky and Eric N.
Prystowsky, the Executors of
the Estate of Dr. Rose
Prystowsky

## TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................ ii

I.    FACTS ................................................. 1

II.   STANDARD OF REVIEW ................................... 6

III.  ARGUMENT ............................................. 7

   A. The Motion Should Be Granted Because There Has Been No
      Undue Delay, Bad Faith or Prejudice.................... 8

   B. Plaintiffs' Statutory Claims Have Merit............... 10

IV.   CONCLUSION ........................................... 16

## TABLE OF AUTHORITIES

### Cases

Abel Holding Co. v. Am. Dist. Tel. Co., 147 N.J. Super. 263
    (App. Div. 1977) ........................................... 13

Adams v. Gould Inc., 739 F.2d 858 (3d Cir. 1984)........... 7, 10

Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d. Cir. 2008) 7,
    9, 10

Foont-Freedenfeld Corp. v. Electro-Protective Corp., 126 N.J.
    Super. 254 (App. Div. 1973) ................................. 14

Gershon v. Regency Diving Center, Inc., 368 N.J. Super. 237
    (App. Div. 2004) ....................................... 14, 15

Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). 8, 10,
    13

Hojnowski v. Vans Skate Park, 187 N.J. 323 (2006)............ 16

Huddell v. Levin, 537 F.2d 726 (3d Cir. 1976)................ 16

Moreira Construction Co. v. Moretrench Corp., 97 N.J. Super. 391
    (App. Div. 1967) ........................................... 14

Synnex Corp. v. ADT Security Services, Inc., 394 N.J. Super. 577
    (App. Div. 2007) ....................................... 13, 16

Tessler & Son, Inc. v. Sonitrol Sec. Sys., 203 N.J. Super. 477
    (App. Div. 1985) ........................................... 13

### Statutes

The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*. 6,
    8

The New Jersey Plain Language Law, N.J.S.A. § 56:12-1, *et seq.* 6,
    8, 10, 13

The New Jersey Truth-in-Consumer Contract, Warranty and Notice
    Act, N.J.S.A. § 56:12-14, *et seq.*................. 6, 8, 10, 13

The Wrongful Death Act, N.J.S.A. § 2A:31-1, *et seq.*........... 15

## <u>Rules</u>

<u>Rule</u> 15(a) of the Federal Rules of Civil Procedure.......... 1, 6

<u>Rule</u> 25(a) of the Federal Rules of Civil Procedure............. 3

<u>Rule</u> 26(a)(1) of the Federal Rules of Civil Procedure....... 1, 3

## <u>Other Authorities</u>

<u>Restatement (Second) of Torts</u> § 402A, comment m.............. 16

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiffs, Stephen D. Prystowsky, Eric N. Prystowsky and Michael Prystowsky, the Executors of the Estate of Dr. Milton Prystowsky, and Stephen D. Prystowsky and Eric N. Prystowsky, the Executors of the Estate of Dr. Rose Prystowsky, hereby move for leave of Court to file the proposed Third Amended Complaint, a copy of which is attached hereto as Exhibit "A". In support thereof, Plaintiffs submit the instant Memorandum of Law.

## I.   FACTS

This action arose from a devastating fire which occurred on January 7, 2004 in the home of Rose and Milton Prystowsky, at 4 Garden Place, Nutley, New Jersey. The fire, which originated in the Prystowskys' lift chair, claimed the lives of Dr. Rose Prystowsky and her home health aide, Carolyn Ada Threadgill, and left Dr. Milton Prystowsky seriously injured. It also destroyed the Prystowskys' house.

In its initial Rule 26(a)(1) Disclosure, on February 12, 2008, Defendant, ADT Security Services, Inc. ("ADT"), produced records "relating to Holmes/Dictograph contract. . . ." The records, purported to be copies of various agreements entered into by Dictograph Surveillance Centers, Inc. and Holmes Protection of New Jersey, Inc., and Plaintiffs' decedent Milton

Prystowsky, all date to 1986[1] or 1991.[2]  See Exhibit "B" attached.  Most importantly, the documents pertain to a burglar alarm system, with fire protection equipment expressly omitted. See, e.g., Exhibit "B" at the document Bates-labeled ADT 128776 - 000017.

On February 19, 2008, Plaintiff served a Request for Production of Documents upon ADT.  Among other things, Plaintiff requested "Copies of any and all contracts or agreements by or between the parties to this litigation."  See Exhibit "C", a copy of Plaintiff's First Request for Production of Documents Addressed to Defendant ADT Security Services, Inc., at Paragraph 8.  Plaintiff also requested "Copies of any contracts, agreements, invoices, receipts, bills, or other writings that are related to the pending litigation."  Id., Paragraph 10.  In response, on March 25, 2008, ADT responded that it "refers Plaintiff to the Dictograph contracts previously produced."  See Exhibit "D" attached, a copy of ADT Security Services, Inc.'s Responses to Plaintiff's First Request for Production of Documents, at Request No. 8.  See also id. at Request No. 10.

On May 10, 2010, Dr. Milton Prystowsky died at age 88, from causes unrelated to the fire.  Subsequently, pursuant to Rule

---

[1] for the documents from Dictograph Surveillance Centers, Inc.

[2] for the documents from Holmes Protection of New Jersey, Inc.

25(a), and with leave of Court, Milton Prystowsky's executors were substituted for Milton Prystowsky as plaintiffs.

On or about December 14, 2011, almost six years after it was first sued, almost four years after it served Plaintiffs with its document production and approximately one year, five months after the fact-discovery deadline, ADT served Plaintiffs with its Rule 26(a)(1) Supplemental Disclosure and its Supplemental Responses to Plaintiff's First Request for Production of Documents.  Exhibit "E" and "F" attached.  In the former document, ADT supplemented its initial Rule 26(a)(1) Disclosure to add the "Contract dated November 19, 2002 and Rider dated January 31, 2003, which are attached hereto and Bates labeled ADT 128776-000098-000100."  Exhibit "E" at 5, Paragraph 9.  In the latter document, ADT similarly supplemented its Response to Plaintiff's  First Request for Production of Documents.  Exhibit "F" at 7, no. 8 and at 8, no. 10.

Attached to ADT's supplements were the excerpts of what purports to be a "Residential Services Contract" signed by Milton Prystowsky, dated November 19, 2002, to which is attached a "Rider for Additional Service," also allegedly signed by Milton Prystowsky on January 31, 2003.  Exhibit "G" (collectively, the "Alleged Alarm Contract").

In relevant part, the reverse side of the Alleged Alarm Contract contains among its terms the following exculpatory language:

> 6.   NO LIABILITY; LIMITED LIABILITY.   IT WILL BE EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES THAT MAY RESULT FROM OUR FAILURE TO PERFORM OUR DUTIES UNDER THIS CONTRACT.   YOU AGREE THAT WE AND OUR AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES AND PARENT COMPANIES ARE EXEMPT FROM LIABILITY FROM ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCES ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT.   IF IT IS DETERMINED THAT WE OR ANY OF OUR AGENTS, EMPLOYEES, SUBSIDIARIES, AFFILIATES OR PARENT COMPANIES ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT.   THESE AGREED UPON DAMAGES ARE NOT A PENALTY. THEY ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.   AT YOUR REQUEST, WE MAY ASSUME ADDITIONAL LIABILITY BY ATTACHING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU.   YOU AGREE THAT WE ARE NOT AN INSURER EVEN IF WE ENTER INTO ANY SUCH AN AMENDMENT.
>
> 7.   EXCLUSIVE DAMAGES REMEDY.   YOUR EXCLUSIVE DAMAGE AND LIABILITY REMEDIES ARE SET FORTH IN PARAGRAPH 6 ABOVE.   WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

Exhibit "G".

Although on its reverse side, the Alleged Alarm Contract contains a Table of Contents indicating twenty-eight discrete sections, the reverse side – the second page of the Alleged Alarm Contract – concludes with Section 15.  After Section 15, a notice that "Terms and Conditions continue on accompanying sheet" appears at the bottom of the reverse side.  Even so, ADT has furnished Plaintiffs with no additional terms and conditions.  Sections 16 through 28 have not been produced, nor has ADT presented any evidence indicating that the exculpatory provisions of the Alleged Alarm Contract were ever explained to Plaintiffs' decedents, let alone expressly assented to.

On December 22, 2011, the Court (Arleo, U.S.M.J.) held a case management conference.  During the conference, Plaintiffs' counsel advised the Court of the production of the Alleged Alarm Contract, of ADT's supplements and that Plaintiffs would be moving to amend their complaint in light of the new development.  Plaintiffs' counsel further stated that she reserved the right to move *in limine* to preclude the admission of the Alleged Alarm Contract.  Plaintiffs' counsel also requested leave to depose ADT's corporate designees as to the Alleged Alarm Contract.  Because there has been no fact discovery as to the Alleged Alarm Contract, the Court granted leave, but ordered the depositions to be concluded by February 10, 2012.  As of this writing, those depositions have not yet taken place.

In the proposed Third Amended Complaint, Plaintiffs have amended the counts alleging damages under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, and have clarified that they also seek damages, reformation and termination of contract under the New Jersey Plain Language Law, N.J.S.A. § 56:12-1, *et seq.*, and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq.* ("TCCWNA").

On January 31, 2012, Plaintiffs' counsel for the first time were given the opportunity to inspect ADT's "original" copy of the Alleged Alarm Contract, the first two pages of which appear to have once been part of a multi-copy "snap out" form.

## II.   STANDARD OF REVIEW

Plaintiffs seek leave to file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

In relevant part, Rule 15, "Amended and Supplemental Pleadings," provides as follows:

(a) **Amendments Before Trial.**

    (1) ***Amending as a Matter of Course.*** A party may amend its pleading once as a matter of course within:

        **(A)** 21 days after serving it, or

        **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion

> under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2)  *Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

"[U]nder the liberal pleading philosophy of the federal rules as incorporated in Rule 15(a), an amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay." Adams v. Gould Inc., 739 F.2d 858, 867 – 68 (3d Cir. 1984).

Given this test, delay alone will not constitute grounds for denial.  Moreover, delay becomes "undue," and thereby creates grounds for the district court to refuse leave, only when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend.  Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d. Cir. 2008). (Citations omitted.)

## III.  <u>ARGUMENT</u>

Plaintiffs seek to amend their complaint in light of ADT's belated production of the Alleged Alarm Contract.  The Alleged Alarm Contract contains exculpatory provisions which, if enforced, would utterly eviscerate Plaintiffs' causes of action

against ADT by limiting recoverable damages to $500.  Assuming *arguendo*, that the Alleged Alarm Contract was actually entered into by Plaintiffs' decedents and ADT – an assumption which Plaintiffs strenuously reject – under New Jersey law it would be manifestly unconscionable.  See, e.g., Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960) and the discussion in Section III.B., *infra*.

In filing the Third Amended Complaint, Plaintiffs therefore seek to amend and clarify their cause of action pursuant to the Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*  The Third Amended Complaint has also been amended and clarified so as to invoke the Court's equitable powers to reform and/or terminate the Alleged Alarm Contract under the Plain Language Law, N.J.S.A. § 56:12-1, *et seq.*, and the Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. § 56:12-14, *et seq*.

**A.**   **The Motion Should Be Granted Because There Has Been No Undue Delay, Bad Faith or Prejudice.**

Plaintiffs' Motion for Leave should be granted because the proposed amendment implicates none of the potential impediments to amending a pleading.

There has been no undue delay in seeking the amendment.  In fact, to the extent there has been delay, responsibility for it rests squarely on the shoulders of ADT, which produced the Alleged Alarm Contract almost six years after it was first sued,

and almost four years after it served Plaintiffs with its initial document production.

It is immaterial that ADT previously furnished Plaintiffs with copies of agreements allegedly entered into by Plaintiffs' decedents and Dictograph Surveillance Centers, Inc. and Holmes Protection of New Jersey, Inc., dating to 1986 and 1991, respectively.  Plaintiffs immediately discounted their relevance, as the alleged agreements clearly relate to a *burglar* alarm system rather than a *fire* alarm system.  Realistically, therefore, Plaintiffs thus had no previous opportunity, or cause, to amend.  See Bjorgung v. Whitetail Resort, LP, *supra*. However, now that ADT has produced the Alleged Alarm Contract, its punitive provisions mandate the amendment of the complaint to reflect this new development, which occurred through no delay of Plaintiffs.

Nor has there been any bad faith by Plaintiffs.  In fact, Plaintiffs are currently in the process of determining, through the depositions of ADT's designees, as to whether, after such a long delay, there has been any bad faith by ADT, the non-moving party, in producing the Alleged Alarm Contract so late.

With respect to the third prong of the test under Rule 15(a), there could be no prejudice to ADT from the proposed amendment.  The Second Amended Complaint now in effect, Exhibit "H" attached, already pleads damages under the Consumer Fraud

-9-

Act, the Plain Language Law and the Truth-In-Consumer Contract, Warranty and Notice Act.  The Second Amended Complaint already demands treble damages.  The proposed amendment merely clarifies and amplifies that which has already been pled.

None of the impediments of the test for allowing an amended pleading exists in this instance.  See, e.g., Adams v. Gould Inc., *supra*.  The amendment should accordingly be permitted.  To the extent that the amendment results in any burden to the Court, it is not one that is unwarranted, Bjorgung v. Whitetail Resort, LP, *supra*, and has not resulted from any act or omission of Plaintiffs.

**B.   Plaintiffs' Statutory Claims Have Merit.**

Although the merit of the claims contained within a proposed amendment is clearly *not* a factor to be considered when weighing a motion for leave to amend, Adams v. Gould Inc., *supra*, a decent respect to the Court's opinion compels Plaintiffs to explain that their revised statutory claims are well-founded in New Jersey law.

In the seminal case of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960), the New Jersey Supreme Court considered the enforceability of an exculpatory provision similar in scope and harshness to that of the Alleged Alarm Contract.  Ten days after delivery of their brand-new Plymouth, while driving approximately twenty miles per hour, Mrs.

-10-

Henningsen lost control of the car, hit a brick wall and was
injured.  A witness to the crash reported that the car suddenly
veered ninety degrees from its lane of travel.  Id. at 368 - 69.
The car's steering mechanism was believed to be faulty.

Chrysler Corporation defended the action by contending that
under the terms of its warranty, the Henningsens had waived all
remedies other than replacement of defective parts.  The court
found the exclusion of all liabilities other than the
replacement of defective parts to be repugnant to the interests
of justice.  Id. at 377 - 78.  While noting the general precept
of freedom of contract, the court observed that such principles
are less applicable in the face of unequal bargaining power.

> [W]e must keep in mind the general principle
> that, in the absence of fraud, one who does
> not choose to read a contract before signing
> it, cannot later relieve himself of its
> burdens. And in applying that principle, the
> basic tenet of freedom of competent parties
> to contract is a factor of importance. But
> in the framework of modern commercial life
> and business practices, such rules cannot be
> applied on a strict, doctrinal basis. The
> conflicting interests of the buyer and
> seller must be evaluated realistically and
> justly, giving due weight to the social
> policy evinced by the Uniform Sales Act, the
> progressive decisions of the courts engaged
> in administering it, the mass production
> methods of manufacture and distribution to
> the public, and the bargaining position
> occupied by the ordinary consumer in such an
> economy. This history of the law shows that
> legal doctrines, as first expounded, often
> prove to be inadequate under the impact of
> later experience. In such case, the need for

> justice has stimulated the necessary
> qualifications or adjustments.

Id. at 386.  (Citation omitted.)

The Court also noted that the warranty in question was skewed lopsidedly in favor of its drafter:

> The language gave little and withdrew much.
> In return for the delusive remedy of
> replacement of defective parts at the
> factory, the buyer is said to have accepted
> the exclusion of the maker's liability for
> personal injuries arising from the breach of
> the warranty, and to have agreed to the
> elimination of any other express or implied
> warranty. An instinctively felt sense of
> justice cries out against such a sharp
> bargain.

Id. at 388.  It further remarked that:

> In present-day commercial life the
> standardized mass contract has appeared. It
> is used primarily by enterprises with strong
> bargaining power and position. "The weaker
> party, in need of the goods or services, is
> frequently not in a position to shop around
> for better terms, either because the author
> of the standard contract has a monopoly
> (natural or artificial) or because all
> competitors use the same clauses. His
> contractual intention is but a subjection
> more or less voluntary to terms dictated by
> the stronger party, terms whose consequences
> are often understood in a vague way, if at
> all." Kessler, "Contracts of Adhesion-Some
> Thoughts About Freedom of Contract," 43
> Colum.L.Rev. 629, 632 (1943); Ehrenzweig,
> "Adhesion Contracts in the Conflict of
> Laws," 53 Colum.L.Rev. 1072, 1075, 1089
> (1953). Such standardized contracts have
> been described as those in which one
> predominant party will dictate its law to an
> undetermined multiple rather than to an

-12-

                individual. They are said to resemble a law
                rather than a meeting of the minds.

Id. at 389 – 90.  Taking note of the courts' equitable powers
"to avoid enforcement of unconscionable provisions in long
printed standardized contracts," id. at 388, the court held the
warranty's exculpatory provision to be unenforceable.  It is
these equitable powers, to reform and terminate unconscionable
consumer contracts, which were later codified in the Plain
Language Law and the Truth-In-Consumer Contract, Warranty and
Notice Act, at N.J.S.A. §§ 56:12-4.1 and 56:12-17, respectively.

     In the instant case, the exculpatory provisions of the
Alleged Alarm Contract are no less unconscionable.  To
paraphrase the court in Henningsen, the pre-printed language
gives little and withdraws much.  Under the terms of the
document, ADT can do nothing, or even cause grievous harm, and
only suffer the payment of $500 as a consequence.  Such terms
give ADT no incentive whatever to perform, rendering ADT's
promises completely illusory.

     In New Jersey, such provisions cannot be enforced.
Henningsen.  And although courts in New Jersey have upheld
exculpatory provisions in alarm contracts,[3] those cases involved

---

[3] Synnex Corp. v. ADT Security Services, Inc., 394 N.J. Super.
577 (App. Div. 2007); Tessler & Son, Inc. v. Sonitrol Sec. Sys.,
203 N.J. Super. 477 (App. Div. 1985); Abel Holding Co. v. Am.
Dist. Tel. Co., 147 N.J. Super. 263 (App. Div. 1977); and Foont-

commercial customers of roughly equal bargaining power with the alarm company, not individual consumers such as Milton and Rose Prystowsky.  See Moreira Construction Co. v. Moretrench Corp., 97 N.J. Super. 391, 394 – 95 (App. Div. 1967)(distinguishing the "gross inequality of bargaining position" at issue in Henningsen from the facts of the commercial dispute before the court).  "The law does not favor exculpatory agreements because they encourage a lack of care."  Gershon v. Regency Diving Center, Inc., 368 N.J. Super. 237, 247 (App. Div. 2004).

In Gershon, the Appellate Division restated the oft-cited test that

> In New Jersey, an exculpatory release will
> be enforced if (1) it does not adversely
> affect the public interest; (2) the
> exculpated party is not under a legal duty
> to perform; (3) it does not involve a public
> utility or common carrier; or (4) the
> contract does not grow out of unequal
> bargaining power or is otherwise
> unconscionable.

368 N.J. Super. at 248.  As noted above, the Alleged Alarm Contract did grow out of unequal bargaining power and was therefore unconscionable.  Given the disjunctive nature of the test, that fact would alone suffice to justify avoidance of the Alleged Alarm Contract's exculpatory clauses.  However, the Alleged Alarm Contract also adversely affects the public

---

Freedenfeld Corp. v. Electro-Protective Corp., 126 N.J. Super. 254 (App. Div. 1973)

-14-

interest, even prohibiting causes of action for which New Jersey
law expressly provides, such as recovery of damages under the
Wrongful Death Act, N.J.S.A. § 2A:31-1, *et seq.*

> We are satisfied that enforcement of the
> exculpatory release agreement executed by
> decedent here would adversely affect the
> public interest intended to be protected by
> the Wrongful Death Act, because it relieves
> the alleged wrongdoer from the legal
> responsibility of compensating decedent's
> heirs, thereby shifting this economic burden
> to public welfare agencies, willing family
> members or private charities. Under these
> scenarios, the intended beneficiaries of the
> Act are deprived of their statutorily
> authorized remedy merely to provide
> defendants with an environment from which to
> operate their business, apparently free from
> the risk of litigation. Such a prospect
> would directly undermine the remedial
> purpose of the Act. Stated differently, even
> if decedent had the legal authority to
> bargain away the statutory right of his
> potential heirs, society's interest in
> assuring that a decedent's dependents may
> seek economic compensation in a wrongful
> death action outweighs decedent's freedom to
> contract.

Gershon, 368 N.J. Super. at 249.

Under the test for enforcement of exculpatory agreements,
the Alleged Alarm Contract also should be avoided because ADT
was under a legal duty to perform.  The Second Amended Complaint
already alleges that ADT was under duties, *inter alia*, to
exercise reasonable care and proper professional judgment in the
selection, supervision, construction, installation and/or
monitoring of the alarm system and to comply with applicable

-15-

building and fire codes.  Such duties further warrant avoidance
of the Alleged Alarm Contract and further recommend adoption of
the amended complaint.

Aside from considerations of duty, the current and proposed
complaints also allege that ADT is strictly liable to
Plaintiffs.  Contractual limitations may not defeat claims of
strict liability.  Huddell v. Levin, 537 F.2d 726, 733 n. 3 (3d
Cir. 1976), citing Restatement (Second) of Torts § 402A, comment
m[4] (applying New Jersey law).

The Alleged Alarm Contract's exculpatory clauses are
additionally unenforceable with respect to claims of personal
injury or death.  Synnex Corp. v. ADT Security Services, Inc.,
note 3, *supra*, at 594, citing, *inter alia*, Hojnowski v. Vans
Skate Park, 187 N.J. 323 (2006)(in personal injury case,
exculpatory provision on skate park agreement void as contrary
to public policy).

Because Plaintiffs' amendments have merit, the amendment
should be permitted.

IV.  **CONCLUSION**

In spite of New Jersey's longstanding commitment to the
protection of consumers with unequal bargaining power, a

---

[4] Comment m states that states that strict liability is "not
governed by the provisions of the Uniform Sales Act, or those of
the Uniform Commercial Code, as to warranties; and it is not
affected by limitations on the scope and content of warranties,
or by limitation to 'buyer' and 'seller' in those statutes."

commitment enshrined both in statute and in case law going back to 1960, if not further, ADT attempted to foist upon Plaintiffs' decedents a manifestly inequitable and unconscionable agreement which effectively rendered ADT's commitment illusory.  The Consumer Fraud Act count of the proposed pleading, the demand for treble damages, and the revisions which clarify Plaintiffs' other statutory claims are more than justified.  There has been no undue delay, bad faith or prejudice on the part of Plaintiffs.  The Motion should be granted.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By:   s/ Deborah A. Crinigan
Deborah A. Crinigan, Esquire
Alan J. Charkey, Esquire
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
(215) 864-7194

Attorneys for Plaintiffs,
Stephen D. Prystowsky, Eric N.
Prystowsky and Michael Prystowsky,
the Executors of the Estate of Dr.
Milton Prystowsky, and Stephen D.
Prystowsky and Eric N. Prystowsky,
the Executors of the Estate of Dr.
Rose Prystowsky

Date:  February 2, 2012